**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-03196-RM-NYW

OTTER PRODUCTS, LLC and
TREEFROG DEVELOPMENTS, INC.,

      Plaintiffs,

v.

OUTLOOK ACQUISITION CORP.,
OUTLOOK FBA CORP.,
AVI SAKKAL,
ELI SAKKAL, and
JOHN DOES 1-10, individually or as corporate/business entities,

      Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

---

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ........................................................................ 1

II.    DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED ............................ 3

       A.     The Court Does Not Have Personal Jurisdiction over Defendants .........................3

       B.     The Complaint Fails to State a Claim for Trademark Infringement Under
              the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) ....................................................7

              1.     The "Quality Control" Exception Is Inapplicable ....................................... 7

              2.     Plaintiffs' "Warranty" Allegations Are Unsupported ............................... 10

       C.     The Complaint Fails to State a Claim for False Advertising or Unfair
              Competition under 15 U.S.C. § 1125(a) ................................................................11

       D.     The Complaint Fails to State a Claim for Dilution under 15 U.S.C.
              § 1125(c) ...............................................................................................................12

       E.     The State-Law Claims Fail for the Same Reasons as the Lanham Act
              Claims ...................................................................................................................13

       F.     The Tortious Interference Claim Is Conclusory and Should Be Dismissed ..........13

III.   CONCLUSION ........................................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adolph Coors Co. v. A. Genderson & Sons, Inc.*,
    486 F. Supp. 131 (D. Colo. 1980)..................................................................................7, 8, 9

*Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*,
    562 F.3d 1067 (10th Cir. 2009) ...........................................................................................11

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017).........................................................................................................6

*Business Payment Sys. v. Business Payment Sys.-Rocky Mt., LLC*,
    No. 12-cv-01695-RBJ-KLM,
    2013 U.S. Dist. LEXIS 202558 (D. Colo. Feb. 20, 2013) ...................................................13

*Clarus Transphase Sci., Inc. v. Q-Ray, Inc.*,
    No. C 06-3450,
    2006 U.S. Dist. LEXIS 60824 (N.D. Cal. Aug. 16, 2006)....................................................3, 4

*Davidoff & Cie, S.A. v. PLD Int'l Corp.*,
    263 F.3d 1297 (11th Cir. 2001) ............................................................................................1

*Fender Musical Instr. Corp. v. Unlimited Music Ctr., Inc.*,
    No. 3:93CV2449 (AVC),
    1995 U.S. Dist. LEXIS 15746 (D. Conn. Feb. 16, 1995) .....................................................11

*GDHI Mktg., LLC v. Antsel Mktg., LLC*,
    No. 18-cv-02672-MSK-NRN,
    2019 U.S. Dist. LEXIS 28512 (D. Colo. Feb. 2019) ...........................................................14

*H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*,
    879 F.2d 1005 (2d Cir. 1989)...............................................................................................7

*Hollingshead v. Province Healthcare Co.*,
    No. 04-cv-02092-MSK-PAC,
    2006 U.S. Dist. LEXIS 53888 (D. Colo. Jul. 20, 2006) ........................................................14

*Huf Worldwide, LLC v. Wal-Mart Stores, Inc.*,
    No. 16cv751-LAB (WVG),
    2017 U.S. Dist. LEXIS 28297 (S.D. Cal. Feb. 28, 2017)...................................................2, 10

*ILS, Inc. v. WMM, Inc.*,
   No. 13-cv-00684-MSK-CBS,
   2014 U.S. Dist. LEXIS 123211 (D. Colo. Sept. 23, 2014) ....................................................13

*Job Store, Inc. v. Job Store of Loveland, Oh., LLC*,
   No. 15-cv-02228-PAB-KLM,
   2016 U.S. Dist. LEXIS 192657 (D. Colo. Sept. 7, 2016) ......................................................5

*Khalik v. United Air Lines*,
   671 F.3d 1188 (10th Cir. 2012) ..............................................................................................4

*Manassas Travel, Inc. v. Worldspan, L.P.*,
   No. 2:07-CV-701-TC,
   2008 U.S. Dist. LEXIS 35217 (D. Utah Apr. 30, 2008) ......................................................14

*Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*,
   988 F.2d 587 (5th Cir. 1993) ...................................................................................................9

*Navajo Nation v. Urban Outfitters, Inc.*,
   935 F. Supp. 2d 1147 (D.N.M. 2013) ....................................................................................12

*Old Republic Ins. v. Cont'l Motors, Inc.*,
   877 F.3d 895 (10th Cir. 2017) .................................................................................................6

*Sally Beauty Co. v. Beautyco, Inc.*,
   304 F.3d 964 (10th Cir. 2002) ...............................................................................................11

*Spyderco, Inc. v. Mambate USA Inc.*,
   No. 15-cv-00943-REB-KLM,
   2016 U.S. Dist. LEXIS 33323 (D. Colo. Feb. 8, 2016) ......................................................5, 6

*Technomarine SA v. Jacob Time, Inc.*,
   905 F. Supp. 2d 482 (S.D.N.Y. 2012)................................................................................9, 12

*Tiffany (NJ) Inc. v. eBay, Inc.*,
   576 F. Supp. 2d 463 (S.D.N.Y. 2008)......................................................................................9

*Vulcan Golf LLC v. Google Inc.*,
   552 F. Supp. 2d 752 (N.D. Ill. 2008) ....................................................................................12

*Walden v. Fiore*,
   571 U.S. 277 (2014).................................................................................................................5

*Warner-Lambert Co. v. Northside Dev. Corp.*,
   86 F.3d 3 (2d Cir. 1996)...........................................................................................................8

*Zino Davidoff SA v. CVS Corp.*,
   571 F.3d 238 (2d Cir. 2009).............................................................................12

**STATUTES AND RULES**

15 U.S.C. § 1114...............................................................................................7

15 U.S.C. § 1125...................................................................................7, 11, 12

Fed. R. Civ. P. 12(b)(2).......................................................................................2

Fed. R. Civ. P. 12(b)(6)....................................................................................2, 4

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 766 cmt. j. ...............................................14

Defendants Outlook Acquisition Corp. ("Outlook ACQ"), Outlook FBA Corp. ("Outlook FBA"), Avi Sakkal, and Eli Sakkal (collectively and individually, "Defendants") submit this Reply in support of their Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 44).

## I.  PRELIMINARY STATEMENT

Plaintiffs' claims in this case all arise from Defendants' resale of genuine OtterBox and LifeProof mobile device cases over the internet and, in particular, on Amazon.com ("Amazon").[1] (ECF No. 27, Amended Complaint, "Compl." ¶¶ 115.)  Plaintiffs allege trademark infringement under the Lanham Act because (as genuine products) these products bear Plaintiffs' trademarks.

But, as confirmed by Plaintiffs' Opposition, this case has nothing to do with trademark law and everything to do with Plaintiffs' efforts to attempt to eliminate competition on Amazon and maintain pricing for its products by preventing their lawful resale.  Under the "first sale" doctrine, the resale of genuine trademarked goods—like here—does not constitute trademark infringement, even if made without the trademark owner's consent. *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301–02 (11th Cir. 2001).  The doctrine provides that trademark protections are exhausted after the trademark owner's first authorized sale of that product.  *Id.*

As demonstrated in Defendants' Motion, Plaintiffs' attempt to invoke the two exceptions to the first sale doctrine—(1) the quality control test; and (2) the material difference exception—fail as a matter of law.

Plaintiffs have failed to allege that the requisite elements to invoke the quality control

---

[1] For ease of discussion, this submission uses the term "Defendants" to refer to one or all of Defendants Outlook ACQ, Outlook FBA, Avi Sakkal, and Eli Sakkal, even if not applicable to all four defendants.  For example, Outlook ACQ does not sell the accused products on Amazon, but instead purchases genuine OtterBox and LifeProof products on the open market and sells them to Outlook FBA, which resells them through an Amazon storefront.  (ECF No. 44-2, ¶¶ 13–15.)  Avi and Eli Sakkal are principals of both Outlook entities.

exception applies under the standards used by other circuits, e.g., that (i) it has nonpretextual quality control procedures that (ii) it abides by, and (iii) the non-conforming sales will diminish the value of the mark.  Plaintiffs do not allege any nonpretextual quality controls (ECF No. 52, "Opp'n" at 4); their only real grievance is that Defendants are reselling genuine products without authorization.  Plaintiffs also fail to allege that its Authorized Resellers actually abide by these purported quality controls. (*Id.* at 4–5.) Whether the products are sold on Amazon through Defendants or one of Plaintiffs' Authorized Resellers, the product is the same to a customer.

Plaintiffs also attempt to argue that the "material difference exception" applies because Plaintiffs have set up the terms of their product warranties to specifically exclude goods sold by unauthorized resellers.  But the Complaint contains no allegations regarding, e.g., whether customers are actually aware of the alleged warranty, or whether customers are truly not offered a comparable warranty.  Courts have dismissed complaints where, like here, they failed to sufficiently allege "how the void warranty is likely to cause confusion or why consumers consider the warranty a relevant difference." *Huf Worldwide, LLC v. Wal-Mart Stores, Inc.*, No. 16cv751-LAB (WVG), 2017 U.S. Dist. LEXIS 28297, at *4 (S.D. Cal. Feb. 28, 2017).

Because Plaintiffs have not (and cannot) establish that any exception to the first sale doctrine applies, Plaintiffs' federal trademark infringement claim (Count I) fails. Plaintiffs' other Lanham Act claims and related state law claims (Counts II–VI) fail for the same reason.  And the Complaint fails to state a claim for tortious interference (Count VII), at least for failing to even identify a specific contract in which Defendants have allegedly interfered.  Thus, Plaintiffs' Complaint should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(6).

The Complaint should also be dismissed under Fed. R. Civ. P. 12(b)(2) because

Defendants do not have any substantial contacts to Colorado. (ECF No. 44, "Mot." at 6–10.) As explained in Defendants' Motion, the mere operation of an Amazon storefront does not create jurisdiction because Defendants have not purposefully directed any activities at Colorado. Plaintiffs argue that there is jurisdiction because Defendants have made significant sales into Colorado. (Opp'n at 9.) But the only support offered is *Plaintiffs'* own purchases of products on three instances. (*Id.* (citing Compl. ¶¶ 22–30).) As previously discussed (Mot. at 8.), Plaintiffs "cannot manufacture personal jurisdiction in a trademark case by purchasing the accused product in the forum state." *Clarus Transphase Sci., Inc. v. Q-Ray, Inc.*, No. C 06-3450, 2006 U.S. Dist. LEXIS 60824, at *11 n.3 (N.D. Cal. Aug. 16, 2006). Plaintiffs ignore this principle.

## II.   DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED

### A.   The Court Does Not Have Personal Jurisdiction over Defendants

As explained in their Motion (Mot. at 5–10), Defendants do not have "substantial contacts" with Colorado such that they could reasonably expect to be haled into court there. Plaintiffs do not dispute that Defendants are not subject to general jurisdiction in Colorado. Rather, Plaintiffs focus on the two-step test for specific jurisdiction, which requires that Plaintiffs first demonstrate that Defendants have minimum contacts with Colorado. (ECF No. 52, "Opp'n" at 7–8.) In order to meet this burden, Plaintiffs must establish two distinct requirements: "(i) that the defendant must have '***purposefully directed*** its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of [the] defendant's forum-related activities.'" *Id.*[2] Plaintiffs have not (and cannot) meet this burden.

With respect to the first requirement, Plaintiffs focus on Defendants' "interactive"

---

[2] All emphasis added unless otherwise indicated.

Amazon storefront[3] and ***Plaintiffs'*** presence in Colorado to somehow allege that Defendants have "purposefully directed" their activities at Colorado.  Plaintiffs argue that, because ***Plaintiffs*** have purchased "thousands of dollars"-worth of products from Defendants' Amazon storefront, that they have created jurisdiction in Colorado.  (Opp'n at 7.)  However, Plaintiffs cannot manufacture jurisdiction by their own purchases of the accused products, as they have overtly sought to do here.  *See, e.g.*, *Clarus*, 2006 U.S. Dist. LEXIS 60824, at *11 n.3 ("A plaintiff cannot manufacture personal jurisdiction in a trademark case by purchasing the accused product in the forum state."). Tellingly, Plaintiffs ignore this issue in their Opposition.

Plaintiffs also make much of the ***unsupported*** allegations in their Complaint that Defendants have made "significant" sales in Colorado.  (Opp'n at 7, 9–11.)  Earlier in this action, Plaintiffs acknowledged that it could not rely on the conclusory allegations in its Complaint, and sought jurisdictional discovery to respond to Defendants' Motion to Dismiss.   However, Plaintiffs never followed through with such discovery.   Instead, they chose to amend their Complaint to add assertions regarding their few purchases from the Amazing Deals Online Amazon storefront, along with unsupported statements that Defendants' activities in Colorado are "significant."  (Compl. ¶¶ 22–30.)  The Court need not credit these conclusory allegations. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("in examining a complaint under Rule 12(b)(6), we will disregard conclusory statements").  Further, Plaintiffs' argument that Defendants have not disputed these allegations is wrong—Plaintiffs cite their own Complaint in support of these statements. Defendants have continuously objected to personal

---

[3] Defendant Outlook ACQ does not operate the Amazing Deals Online storefront; it only sells products to Outlook FBA.  (ECF No. 44-2 ¶¶ 13–14.)  The Complaint should be dismissed with respect to Outlook ACQ for this additional reason.

jurisdiction in Colorado for a lack of minimum contacts with the forum. (*See, e.g.*, Mot. at 7–10.)

Whether Defendants have made sales in Colorado is not controlling of the personal jurisdiction inquiry (and setting aside the fact that the only sales of record are those made by Plaintiffs in connection with this lawsuit). For the Court to exercise specific jurisdiction under the Supreme Court's *Walden* decision and other controlling precedent, there must be "***intentional conduct*** by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). This Court has found that the minimum contacts required for personal jurisdiction did not exist where defendants submitted affidavits stating, *inter alia*, that the defendants' "online storefronts are accessible to all visitors in exactly the same way, regardless of a visitor's physical location"; that defendants "ha[d] never advertised in Colorado or attempted to target Colorado visitors"; and "Plaintiff's cause of action would arise regardless of whether Colorado consumers had purchased Defendant[s'] allegedly infringing goods." *Spyderco, Inc. v. Mambate USA Inc.*, No. 15-cv-00943-REB-KLM, 2016 U.S. Dist. LEXIS 33323, at *7–8 (D. Colo. Feb. 8, 2016); *see also Job Store, Inc. v. Job Store of Loveland, Oh., LLC*, No. 15-cv-02228-PAB-KLM, 2016 U.S. Dist. LEXIS 192657, at *15 (D. Colo. Sept. 7, 2016) ("the jurisdictional inquiry hinges on whether defendant 'purposefully exploited the [Colorado] market' or otherwise targeted the state"). Likewise, Defendants have not "purposefully directed" ***any activity*** at Colorado. The Amazing Deals Online storefront is accessible to all visitors in exactly the same way, regardless of a visitor's physical location and Defendants do not direct advertising to Colorado residents, by geographically-focused online marketing or otherwise. (ECF No. 44-2, ¶ 10).

With respect to the second prong of the "minimum contacts" test, Plaintiffs' claims do

not "arise out of" any activity directed at Colorado, but out of Defendants' activities in New Jersey. *Spyderco*, 2016 U.S. Dist. LEXIS 33323, at *8; *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (for specific jurisdiction to exist, "'the *suit*' must 'arise out of or relate to the defendant's contacts with the *forum*'") (emphasis in original).

Even if Plaintiffs were able to meet the "minimum contacts" test for specific jurisdiction (they cannot), the Court must still decide whether other considerations would "render jurisdiction unreasonable" such that "the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." *Old Republic Ins. v. Cont'l Motors, Inc.*, 877 F.3d 895, 908–09 (10th Cir. 2017). Reasonableness is determined by considering several factors including "the burden on the defendant" and "the plaintiff's interest in receiving convenient and effective relief." *Id.* As explained in Defendants' Motion (Mot. at 10), the burden on Defendants in defending themselves in a jurisdiction across the country is significant. On the other hand, Plaintiffs do not dispute that Plaintiffs would not be prevented from seeking "convenient and effective" relief if Plaintiffs brought this dispute in a jurisdiction where Defendants actually do have significant contacts, e.g., New Jersey. Plaintiffs have not demonstrated any particular need or convenience in bringing suit in Colorado, other than increasing Defendants' burden to litigate.

Plaintiffs are readily equipped to bring this dispute in a jurisdiction where Defendants actually do have significant contacts, e.g., New Jersey. Indeed, Plaintiffs recently agreed to transfer a case with similar claims to the Eastern District of New York. *Otter Prods., LLC v. Blue Point Sols. NY LLC*, No. 1:18-cv-03130 (D. Colo., filed Dec. 05, 2018), *transferred*, No. 2:19-cv-01537 (E.D.N.Y. Mar. 21, 2019). But Plaintiffs chose to file suit in Colorado in order to create hardship for the Defendants. In the past four months alone, Plaintiffs have brought almost

20 litigations against "unauthorized sellers," all in this district, making nearly identical allegations regarding the same seven alleged counts of trademark infringement, unfair competition and state law claims. (*See* Declaration of Sandra A. Hudak, "Hudak Decl." ¶ 3.)

This case was filed in this District for one reason: to bully individuals and small businesses, such as the Defendants, into foregoing otherwise lawful conduct (i.e., reselling phone cases). However, none of the Defendants have the "substantial contacts" needed to sustain jurisdiction in this District under Supreme Court and Tenth Circuit precedent. Plaintiffs have known this all along and therefore sought to improperly manufacture jurisdiction through purchases of the accused products. For these reasons, the Complaint should be dismissed.

**B.     The Complaint Fails to State a Claim for Trademark Infringement Under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a)**

Count I of the Complaint purports to state a claim for trademark infringement under Sections 1114 and 1125(a)(1)(a) of the Lanham Act. As discussed, there can be no trademark infringement claim based on Defendants' resale of *genuine* products on Amazon because "the unauthorized sale of a trademarked article does not, without more, constitute a Lanham Act violation." *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1023 (2d Cir. 1989). Plaintiffs have attempted to invoke the "quality control" and "material difference" exceptions to the first sale doctrine, but fail to establish that these exceptions apply.

**1.     The "Quality Control" Exception Is Inapplicable**

As previously noted (Mot. at 11–13), it does not appear that the "quality control" exception—first developed by the Second Circuit—has been explicitly adopted by this Circuit. Plaintiffs cite the *Adolph Coors* case to argue otherwise. (Opp'n at 16.) But this case does not speak to the "quality control" exception; its reasoning followed the "material differences"

exception, finding that "defendant is engaged in reselling a product of inferior quality." *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F. Supp. 131, 136 (D. Colo. 1980).

When the exception has been applied, courts have only done so in limited circumstances where the trademark owner has shown that "(i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark." *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996). Plaintiffs' allegations do not meet this standard.

With respect to the first element, Plaintiffs have not alleged anything beyond "pretextual" quality control procedures. Although Plaintiffs identify a list of purported quality control procedures (Opp'n at 4), these procedures mostly just require that no products are sold without authority by Plaintiffs. For example, Plaintiffs argue that Authorized Resellers "[s]ell[] online only if they are first vetted and approved by Plaintiffs to be an approved online seller." (*Id.* (citing Compl. ¶ 87–88, 90–92).) The other quality controls are similarly contrived. One simply requires that Authorized Resellers are prohibited from selling damaged or defective products. (Opp'n at 4 (citing Compl. ¶ 79).) Such generic procedures are merely "pretextual" and could be invoked by any trademark holder, thus, eviscerating the first-sale doctrine.

As far as the second element, Plaintiffs do not allege that these quality control procedures are actually followed. For example, Plaintiffs allege that "Authorized Online Resellers are prohibited from selling anonymously." (Compl. ¶ 89.) But, *Plaintiffs do not allege that Authorized Resellers actually abide by this requirement or any other.* Instead, Plaintiffs' Opposition dances around the issue. (*See* Opp'n at 3–4.)

In contrast to the meaningless procedures recited by Plaintiffs here, "cases in which the

quality control test has supported a non-genuineness claim routinely and more specifically allege an actual disruption in quality control procedures and ***how such disruption has or would be likely to damage the product itself and thus impact the value of the mark***." *Technomarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 490 (S.D.N.Y. 2012) (dismissing complaint where no allegations demonstrating "'substantial' post-sale quality control procedures, or that non-conforming sales diminish the value of its mark").  While there are situations where courts found that the quality control doctrine may be appropriate, they all involve "some defect (or potential defect) in *the product itself* that the customer would not be readily able to detect." *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 591 (5th Cir. 1993) (emphasis in original).  In finding that the quality control exception did not apply, the *Matrix* Court explained:

> The oil, shoes, and beer from *Shell, El Greco,* and *Coors* [applying the quality control exception] all contained or could potentially contain a latent product defect due to the unauthorized distributor's failure to observe the manufacturer and mark owner's rigorous quality control standards. ***Most importantly, a consumer would not necessarily be aware of the defective condition of the product and would thereby be confused or deceived.***

*Id.*  Here, because the products at issue were all manufactured, packaged and sold into the stream of commerce ***by Plaintiffs themselves***, and thus there are no "latent product defects," there is no violation of the law.  The "quality control" exception does not apply.

Following Plaintiffs' logic, consumers who purchase genuine OtterBox products (e.g., at a retail store) would be ***prohibited*** from reselling them anywhere (e.g., at a flea market). This is not the law. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 473 (S.D.N.Y. 2008) ("[W]hile rights holders . . . may have obvious economic incentives to curtail the sale of both counterfeit and authentic goods on the Internet . . . the law provides protection only from the former, not the latter.").

It is clear that Plaintiffs are seeking to manufacture a way to stop unauthorized entities from reselling their goods, and thus seek to turn the first-sale doctrine on its head. Indeed, Plaintiffs' counsel instructs brand owners how to "***create material differences***" where they would otherwise not have legal claims against third-party sellers of genuine products. (*See* Hudak Decl., Exs. A and B.) If these schemes are allowed persist, the judicially-created "quality control" and "material difference" exceptions to the first-sale doctrine will swallow the rule.

### 2. Plaintiffs' "Warranty" Allegations Are Unsupported

Plaintiffs' also attempt to invoke the "material difference" exception to the first sale doctrine, but the only alleged difference is that the products sold by Defendants "are not covered by Plaintiffs' warranty." (Opp'n at 2.) As Defendants explained in their Motion (Mot. at 13–14), Plaintiffs fail to provide anything but conclusory allegations as to why consumers would consider the warranty a relevant difference. (Compl. ¶¶ 112–13.)

In their Opposition Brief, Plaintiffs flippantly argue that "it is quite apparent that a consumer's right to receive a replacement product if a defect occurs is something a consumer would deem relevant when purchasing a product." (Opp'n at 18.) But there are numerous problems with this argument. The Complaint contains no allegations to support the notion that customers purchasing OtterBox and LifeProof mobile device cases—relatively inexpensive pieces of plastic—would consider Plaintiffs' warranty relevant to their purchasing decision. Furthermore, there are no allegations to establish that customers are actually aware of the alleged warranty at the time of purchase or that the restriction against unauthorized sellers is actually enforced by Plaintiffs. And courts have dismissed complaints for a failure to sufficiently allege "how the void warranty is likely to cause confusion or why consumers consider the warranty a

relevant difference." *See, e.g.*, *Huf Worldwide*, 2017 U.S. Dist. LEXIS 28297, at *4.

Moreover, any vendor (whether authorized or not) could provide the same warranty coverage as Plaintiffs, i.e., a "replacement product if a defect occurs." (Opp'n at 18.)  This is in sharp contrast to the *Beltronics* and other cases relied upon by Plaintiffs, which concerned products that required factory servicing.  *See, e.g.*, *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1076 (10th Cir. 2009) (high-end radar detectors); *see also Fender Musical Instr. Corp. v. Unlimited Music Ctr., Inc.*, No. 3:93CV2449 (AVC), 1995 U.S. Dist. LEXIS 15746, at *10 (D. Conn. Feb. 16, 1995) (guitars).

Plaintiffs' conclusory allegations regarding its purported Otter Warranty are simply insufficient to establish a "material difference."  Count I should be dismissed.

### C.   The Complaint Fails to State a Claim for False Advertising or Unfair Competition under 15 U.S.C. § 1125(a)

As explained in Defendants' Motion (Mot. at 14–15), Plaintiffs' claims of false advertising (Count II) and unfair competition (Count III) fail for the same reasons as Count I. Specifically, these claims are based on the same set of facts discussed above: Defendants' mere resale of genuine products without Plaintiffs' authorization. (*See, e.g.*, Compl. ¶¶ 223–66.)

Plaintiffs do not dispute that its unfair competition claim should be considered together with Count I (*see* Opp'n at 13). Plaintiffs contend that Defendants have not sufficiently addressed Plaintiffs' false advertising claim. (*Id.* at 18.)  But Defendants explain in their Motion that the Complaint provides nothing but conclusory allegations as to why consumers would consider the warranty to be "material."  (Mot. at 13–14); *Sally Beauty Co. v. Beautyco, Inc.*, 304

F.3d 964, 980 (10th Cir. 2002) (false advertising claim requires "*material*" misrepresentation).[4]

### D.     The Complaint Fails to State a Claim for Dilution under 15 U.S.C. § 1125(c)

With respect to Plaintiffs' dilution claim, Plaintiffs have not even sufficiently pled the first element—namely, that the asserted OTTERBOX® trademark is famous. (*See* Mot. at 17.) Defendants provided representative examples in their Motion of the merely conclusory allegations of the mark's fame in the Complaint.  (Mot. at 16 (citing Compl. ¶¶ 275–76, 278).) Plaintiffs argue that these conclusory allegations are sufficient (Opp'n at 19), but the case law cited by Plaintiffs is distinguishable.  *See Navajo Nation v. Urban Outfitters, Inc.*, 935 F. Supp. 2d 1147, 1167–68 (D.N.M. 2013) (factual issue where plaintiffs set forth specific allegations regarding over 50 years of use and more than $500 million in sales); *Vulcan Golf LLC v. Google Inc.*, 552 F. Supp. 2d 752, 772–73 (N.D. Ill. 2008) (factual issue where plaintiffs set forth specific allegations regarding marketing efforts and national advertising campaign).

Further, as explained above, and in Defendants' Motion, Defendants are merely reselling authentic products.  The dilution claim therefore fails.  *Technomarine*, 905 F. Supp. 2d at 493.

Any claim of tarnishment fails because Plaintiffs do not (and cannot) allege that Defendants' sales links the OTTERBOX® trademark to "products of *shoddy quality*" (Opp'n at 19; Mot. at 16).  Plaintiffs' allegations simply *speculate* that Defendants could potentially sell a damaged product.  (*See, e.g.*, Compl. ¶ 285 ("Because the products Defendants sell . . . are not subject to . . . Otter's quality controls, consumers who purchase products from Defendants are *more likely* to receive a poor quality, damaged, or defective product").)   Absent a material

---

[4]  In any event, Plaintiffs' allegations do not support a conclusion that Defendants falsely advertise that the "products come with the Warranty." (Opp'n at 18). Both the listing shown in the Complaint and Amazon's policies direct the consumer to review Amazon's "listing comments" and Plaintiffs' "website for details" regarding warranty terms. (Compl. ¶¶ 171–72.)

difference, the Lanham Act does not impose liability for sales of genuine product "because such a sale does not inherently cause confusion or dilution." *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009).  Count IV should be dismissed.

### E.       The State-Law Claims Fail for the Same Reasons as the Lanham Act Claims

As explained in Defendants' Motion (Mot. at 17), Plaintiffs' state-law claims of common law trademark infringement (Count V) and violation of the CCPA (Count VI) rise or fall with Plaintiffs' Lanham Act claims.  Plaintiffs do not argue otherwise.  (Opp'n at 19.)  For at least the same reasons as Plaintiffs' Lanham Act claims, Plaintiffs' state-law claims fail.

### F.       The Tortious Interference Claim Is Conclusory and Should Be Dismissed

Plaintiffs' arguments regarding Count VII—claiming tortious interference with contract and business relations—do nothing to address the deficiencies discussed in Defendants' Motion. (*See* Mot. at 17–19.)  Plaintiffs' argument that they adequately identified a "class of contracts" with "Authorized Resellers" misses the point; Plaintiffs have not identified any specific contract with which Defendants have allegedly interfered.  *See, e.g.*, *ILS, Inc. v. WMM, Inc.*, No. 13-cv-00684-MSK-CBS, 2014 U.S. Dist. LEXIS 123211, at *23 (D. Colo. Sept. 23, 2014) (no inducement found where Plaintiffs described contract in generalities and "disclose[] nothing about . . . any other requirements of the contract").  Plaintiffs merely speculate that Defendants acquired Otter Products from unnamed "Authorized Resellers" (Compl. ¶ 187).[5]

Plaintiffs' allegations with respect to the requisite "intent" element are likewise deficient. Plaintiffs argue that Defendants intended to induce a breach because they received a letter

---

[5] Plaintiffs' cited case law (Opp'n at 19) does nothing to support their argument, since the plaintiff in that case *specifically identified* two vendors with whom the defendant had allegedly tortiously interacted.  *Business Payment Sys. v. Business Payment Sys.-Rocky Mt., LLC*, No. 12-cv-01695-RBJ-KLM, 2013 U.S. Dist. LEXIS 202558, at *25–29 (D. Colo. Feb. 20, 2013).

informing them that (unidentified) Authorized Resellers are "prohibited from selling products to resellers." (Opp'n at 20; Compl. ¶ 189.) But no intent to induce a breach can be "inferred" under these circumstances. Like any other merchant, Defendants' "primary purpose" in buying and selling mobile phone cases is to earn a profit. *See, e.g.*, Restatement (Second) of Torts § 766 cmt. j (requiring that "the actor acts for the ***primary purpose*** of interfering with the performance of the contract"); *Manassas Travel, Inc. v. Worldspan, L.P.*, No. 2:07-CV-701-TC, 2008 U.S. Dist. LEXIS 35217, at *8 (D. Utah Apr. 30, 2008) (dismissing claim where defendants "acted, not with the deliberate intent to injure [the plaintiff], but to gain economic benefit").

Plaintiffs argue that the "competitor's privilege" does not apply to interference with existing contracts. (Opp'n at 20.) But this privilege applies to the allegations of tortious interference with business relationships (*see* Compl. ¶¶ 190–91), as well as claims of tortious interference with existing at-will contracts. *See, e.g.*, *Hollingshead v. Province Healthcare Co.*, No. 04-cv-02092-MSK-PAC, 2006 U.S. Dist. LEXIS 53888, at *16–17 (D. Colo. Jul. 20, 2006) (cited by Opp'n at 20). Again, the Complaint does not sufficiently allege the required elements of a tortious interference claim, including details regarding the allegedly breached contracts, such as if they were "at will." *See, e.g.*, *GDHI Mktg., LLC v. Antsel Mktg., LLC*, No. 18-cv-02672-MSK-NRN, 2019 U.S. Dist. LEXIS 28512, at *11 n.4 (D. Colo. Feb. 2019) ("An essential requirement of a tortious interference claim against a competitor is that the contract in question was not terminable at-will."). Count VII of the Complaint should be dismissed.

## III.   CONCLUSION

For the foregoing reasons, and those discussed in Defendants' Motion to Dismiss, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety.

Dated: April 4, 2019

Respectfully submitted,

*/s/ Ian R. Walsworth*

Anthony F. Lo Cicero
Mark Berkowitz
Sandra A. Hudak
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Telephone: (212) 336-8000
FAX: (212) 336-8001
E-mail:  alocicero@arelaw.com
         mberkowitz@arelaw.com
         shudak@arelaw.com

Ian R. Walsworth
Donald E. Lake III
LEWIS BRISBOIS BISGAARD &
SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, CO 80203
Telephone: (720) 292-2059
FAX: (303) 861-7767
E-mail: Ian.Walsworth@lewisbrisbois.com
        Tripp.Lake@lewisbrisbois.com

Attorneys for Defendants Outlook Acquisition
Corp., Outlook FBA Corp., Avi Sakkal, and
Eli Sakkal

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 4, 2019, a true copy of the foregoing reply brief and supporting declaration and exhibits were filed electronically through the Court's CM/ECF System.  Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system.

*/s/ Ian R. Walsworth*
Ian R. Walsworth